:34 LRA781n

TUNNICLIFFE *v.* BAY CITIES CONSOLIDATED RAILWAY CO.[1]

1. APPEAL—JURY—CHALLENGE TO ARRAY—ESTABLISHING ERROR.

Whether the court erred in overruling a challenge to the array of jurors will not be considered on appeal, where the record contains nothing to show that the statements of fact set forth in the challenge are true, or that the jurors were in any way disqualified.

2. NEGLIGENCE—EVIDENCE—HARMLESS ERROR.

In an action against a street-railway company for injuries to a passenger, an employé of the defendant testified that, shortly after the accident, he was instructed by his superiors to find out by whose car the plaintiff was hurt, and that he thought he asked all of the motormen who were then at work. *Held,* that defendant was not prejudiced by permitting the witness further to state that he was unable to ascertain what car caused the injury.

3. TRIAL—REMARKS OF COUNSEL.

A judgment against a street-railway company for injuries received while alighting from a car will not be reversed because of a statement by plaintiff's counsel in his closing argument, that, as to defendant's conduct of its business, one would break his wagon in going across a certain street at any place, where the court at once rebuked counsel for making the statement.

4. ·SAME.

It is the duty of trial courts, so far as possible, to prevent improper remarks by counsel engaged in the trial of causes; and persistent transgressions justify, if they do not demand, more stringent measures than mere instructions to juries to disregard such statements.

5. SAME—INSTRUCTIONS TO JURY—SUBMISSION OF QUESTIONS OF FACT.

An instruction that it is claimed that certain testimony is confirmed by the evidence of a designated person, "and by the fact of the finding of the bolt there," which testimony the jury may consider, is not open to the objection that it assumes the finding of the bolt to be an established fact.

---

[1] Rehearing denied December 17, 1895.

6. SAME—CREDIBILITY OF WITNESS—ESTABLISHED FACT.

    *It seems* that, where the testimony of a witness as to a certain fact is uncontradicted, and his credit is attacked solely upon the ground that he did not testify to such fact upon a former trial, and that in the meantime he had been discharged from the employ of the party injuriously affected by his testimony, it is not reversible error for the court to treat such fact as established.

7. PERSONAL INJURIES—DAMAGES—MISCARRIAGE.

    In an action for negligent injuries, followed by a miscarriage, an instruction that the plaintiff might recover for all her personal pain and suffering occasioned by the accident, and that the fact that she had suffered a miscarriage, while not giving her any right to damages against the defendant, might be considered by the jury, if found to be the result of the accident, is not ground for a reversal, in that it failed to limit the recovery for the miscarriage to the physical and mental suffering attending the same, where no request was made for more explicit instructions.

Error to Bay; Maxwell, J. Submitted October 11, 1895. Decided December 10, 1895.

Case by Louise M. Tunnicliffe, an infant, by her next friend, William H. Tunnicliffe, against the Bay Cities Consolidated Railway Company, for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*T. A. E. & J. C. Weadock* and *James E. Duffy,* for appellant.

*James Van Kleeck,* for appellee.

HOOKER, J. This cause is here upon a second appeal, and a statement of the case will be found in 102 Mich. 624.

Upon a second trial the counsel for the defendant filed a challenge to the array. The printed record contains a copy of this paper, within which is what purports to be a copy of an order setting aside the returns of jury lists for the year 1894, and ordering that the supervisors and

town clerks of the various townships, and the supervisors and aldermen of the various wards of the cities in Bay county, make and return new lists, etc. The challenge states that this order was made on November 24, 1894, at a time when no jury cases were pending. The challenge sets up other facts in relation to the subsequent steps taken to obtain a jury for the March, 1895, term of said court, and alleges a number of irregularities. There is nothing in the record, as printed, which takes the place of a return as to these facts,—not even a certificate that any such order was made, or how the jury was procured,—and nothing to show that the jurors were not in every way qualified to act. We must, therefore, pass that subject without discussing the question raised in the challenge, no error being affirmatively shown.

The second assignment of error is based upon the following question, asked by defendant's counsel, to a lady witness upon cross-examination:

"*Q.* What did you mean, a few minutes ago, when you told us Bennett was within two feet of her when she fell?

"*The Court:* She didn't testify so.

"*Mr. Weadock:* I take exception.

"*The Court:* She said Mr. Bennett was within two feet of her, but not when she fell."

We think that the court's statement of the testimony was correct.

John Northrop, a former employé of the defendant, was called as a witness for the plaintiff, and testified that, upon the day following the accident, he found a sand pedal near the place of the accident, and, after he heard that plaintiff had been hurt, he was called into the office by his superiors, and asked to find out by whose car the plaintiff was hurt. He was asked:

"*Q.* What did you do?

"*A.* They called me into the office. Of course, I was on the corner here. They told me to find out— It seems

they didn't know whose car this was on; and they told me to find out, if I could, whose it was.

"*Q.* What did you do?

"*A.* I asked the motormen that were working that day, and they didn't seem to know anything about it.

"*Q.* Did you ask all the motormen?

"*A.* I won't say, positively, I asked all of them, but I think I did, that were working at that time.

"*Q.* Could you find out upon which car Mrs. Tunnicliffe was? (Objected to as incompetent. Objection overruled, and exception taken.)

"*A.* No, sir; I did not."

This testimony was not important. It appears that he did not ask all of the motormen, and did not learn anything about it. As he does not say that he inquired of the operators of this car, there is no room for the inference that they sought to conceal the fact, if they knew of it, which they say they did not, at this time. We think that the defendant was not injured by this testimony.

Exceptions were taken to the remarks of counsel, which were, apparently, out of order. It is claimed that they were provoked, though the statement of counsel, that he wanted "to say to this jury that, the way this corporation conducts its business, you have only to go down on Center street, and you will break your wagon going across the street at any place," does not appear to be justified by the record, and counsel does not attempt to explain how that fact could have any legitimate bearing upon the case. The court rebuked counsel, and we presume that the jury, as men of average intelligence, would have known that it did not have anything to do with the case, if the court had not told them so. These questions are of such frequent occurrence that we feel called upon to say that it is past our comprehension why counsel should allow themselves to be betrayed into remarks so far out of place in a court of justice, whose proceedings should be marked with candor and decorum, and where words should be weighed before they are uttered. This court has frequently said that the circuit

court has power, and should not permit the abuse of the privileges of an attorney; and persistent transgressions justify, if they do not demand, more stringent measures than mere instructions to juries to disregard improper statements.  If, as counsel asserts, these remarks were provoked, it but emphasizes the importance of energetic action by the circuit judge; for, if counsel cannot be protected, and have their clients' interests protected, by the circuit judge, to the extent of their legal rights, the inducement is strong to attempt to take care of them by the same doubtful measures as those by which they are assailed.  The effort of the court should be to prevent such things, rather than merely to rebuke them, though we recognize the fact that this cannot always be done. Certainly, the proper remedy is not for this court to reverse cases, where it does not appear that injury has been done, thereby increasing the delay and cost of justice, and subjecting the public to increased burdens. Moreover, when such questions are brought here, we may see them in their most favorable light for the appellant, as the provocation, if there be one, is quite likely to be omitted.  We repeat, therefore, more at length, perhaps, than the importance of this particular case demands, what we have several times said, that the trial courts should, so far as possible, control counsel, and see to it that they keep within due bounds in the trial of causes. We cannot say that the defendant was injured by these remarks.

In his charge, the court said:

"It is claimed that that testimony is confirmed by the evidence of Miss Ridiker, whose testimony you have heard, and by the fact of the finding of the bolt there. That testimony you may consider."

It is now contended that he thereby told the jury, in substance, that the finding of the bolt was an established fact, when it should have been left to the jury to believe or disbelieve Northrop, the only witness who stated it.

We think the charge not open to that imputation, and the jury, doubtless, understood that the questions of fact were left to them. Moreover, the witness was not contradicted, and his credit is attacked only because he had been in the employ of the railway company, and, upon the second trial (being after his discharge), he had testified to this fact, which was not called out upon the former trial.

Upon a former trial the court charged the jury that, "if the plaintiff lost the child by reason of the liability of the defendant, * * * you may give damages for it. The society, enjoyment, and prospective services of the child is a recognized element, and you may give what it is reasonably worth." This was held to be error, and her right to recover for the miscarriage was limited to the physical and mental suffering attending the miscarriage. Upon the last trial the court said to the jury that the plaintiff might recover "for all her personal pain and suffering occasioned by the accident," and that they might take into consideration the fact that she was *enceinte.* He gave defendant's request, *i. e.,* that—

"The fact that the plaintiff in this case has suffered a miscarriage does not give her any right to recover damages against the defendant. She must show, by preponderance of evidence, that the injury was occasioned by the neglect of the defendant, and, unless she does, then your verdict must be for the defendant."

He followed it by an instruction that—

"That fact did not give her any right to any damages against the defendant, but it may be considered, as I said before, in case she was in that condition, and that result was produced by this accident."

While this subject might, perhaps, have been profit- ably discussed more at length, counsel for the defendant did not deem it of sufficient importance to frame a further request upon it. If entitled to a verdict, she had the right to damages for personal pain and suffering,

mental and physical, occasioned by the accident, and, if her sickness was aggravated by a miscarriage caused thereby, the attendant pain and suffering was to be considered.

Several other assignments of error are discussed by counsel, which we think do not require special notice. We pass them with the remark that we find nothing in the case calling for a reversal.

The judgment will, therefore, be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred.   LONG, J., did not sit.