## WASHINGTON & O. D. RY. CO. v. DULANY.

(Court of Appeals of District of Columbia.  Submitted October 13, 1922.
Decided April 3, 1923.)

### No. 3768.

**1. Master and servant ⬤⟿279(4)—Evidence held to sustain verdict finding negligence of fellow servant as cause of death.**

Evidence that a lineman employed by defendant, who was in apparent good health, had climbed a ladder to make repairs to a trolley wire, leaving a fellow servant below to hold off from the ground the coil of wire which the lineman was to attach to the trolley wire, that a moment later the lineman was seen to fall from the ladder, and the coil of wire was lying on the ground, in contact with a rail, and it was subsequently observed one end of it had been attached to the trolley wire, *held* sufficient to warrant the jury in inferring that the fall which resulted in the lineman's death was caused by an electric shock, resulting from the fellow employé's negligence in dropping the coil of wire.

**2. Appeal and error ⬤⟿1052(6)—Admission of evidence held cured by directed verdict on count to which it related.**

The admission of evidence of a general custom of electric railways to furnish line repair cars, which were not furnished by defendant, in support of a count for the death of an employé, alleging failure to furnish proper appliances, if erroneous, was harmless, where the court directed a verdict for defendant on that count, and the jury rendered verdict for plaintiff only on a count based on the negligence of a fellow employé.

**3. Appeal and error ⬤⟿1047(4)—Rebuttal testimony held not to impeach defendant's witness and harmless.**

Testimony by defendant's witness that he had made a statement to plaintiff as to the manner in which plaintiff's son was killed, and had not been told not to talk about the case to plaintiff, was not impeached by plaintiff's testimony in rebuttal, detailing a conversation in which the witness related the occurrences surrounding the accident, and a subsequent conversation in which the witness refused to repeat the statement, and the admission of the rebuttal testimony was not prejudicial to defendant.

**4. Trial ⬤⟿120(1)—Counsel should not make remarks unsupported by evidence.**

Attorneys are officers of the court, whose duty it is to do nothing and say nothing which will interfere with the orderly administration of justice, and therefore they should not make statements which are not warranted by the evidence, especially in arguing the case to the jury, who are not trained in weighing evidence.

**5. Appeal and error ⬤⟿930(2)—Jury presumed to have obeyed instruction to disregard remarks withdrawn by counsel.**

Where counsel withdrew a remark when objection was made that it was not sustained by the evidence, and the court instructed the jury to disregard the statement, it cannot be assumed that the jury took no heed of the withdrawal and disobeyed the positive mandate of the court.

**6. Trial ⬤⟿132—Remark withdrawn by counsel held not reversible error.**

Where counsel, in commenting, as he had a right to do, on defendant's failure to produce on demand a statement by plaintiff's intestate to defendant's physician, made an apparently inadvertent reference to suppression of testimony by defendant, which he promptly withdrew when the court sustained defendant's objection to the argument, and the court thereafter directed the jury to disregard the statement, it

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was not reversible error for the court to refuse defendant's motion to withdraw the case from the jury.

Appeal from the Supreme Court of the District of Columbia.

Action by H. Rozier Dulany, Jr., as administrator of Edwin Delany Bland, deceased, against the Washington & Old Dominion Railway Company, a corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

Wilton J. Lambert and Rudolph H. Yeatman, both of Washington, D. C., for appellant.

Thomas Ruffin, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. Edwin Delany Bland and C. A. Trammell were employed as linemen by the Washington & Old Dominion Railway Company. On the 19th of June, 1916, Bland and his assistant, Trammell, were called upon to repair an overhead trolley wire, which was out of order, and which was established by the company as a conductor of electricity to furnish the motor power for its transportation service.

It appeared from the evidence submitted by plaintiff's intestate that to make the needed repairs Bland mounted a ladder reaching from the ground to the trolley wire, a height of about 22 feet, and carried with him one end of a coil of so-called guy or messenger wire; that the rest of the coil was left in the hands of his assistant, Trammell; that as long as Trammell stood on dry wood, with the coil in his hand, it was safe for Bland to go up the ladder and to attach his end of the coil of messenger wire to the trolley wire, but that, if the coil was not kept free of the ground, there was danger of establishing a circuit of electricity and of communicating an electrical shock to Bland, when his end of the messenger wire came in contact with the trolley wire, which was to be repaired, and which carried a voltage of 650 volts.

William H. Heck, a witness for plaintiff's intestate, testified that, when Bland mounted the ladder with the end of the messenger wire in his hand, Trammell was standing on the cross-ties at the foot of the ladder with the coil of messenger wire in his hand; that, just as Bland got to the top of the ladder, Heck turned his head away from the ladder towards the woods, and that on facing the ladder again he saw Bland falling; *that Trammell was then standing near the ladder, and that the coil of wire was then lying on the ground close to the foot of the ladder.* As the result of the fall Bland's skull was broken, and within 12 hours after the accident he died from the injuries received.

Robert E. Coleman, a witness for plaintiff's intestate, said that, after hearing Trammell telephone for a doctor, he went to the scene of the accident, and there saw Bland lying near the tracks; *that he then saw, hanging from the trolley wire, a wire which ran to a coil of wire lying on the ground.*

Paul W. Proctor testified that he met Trammell, who was on his way to telephone for a doctor, and that Trammell told him that a lineman

had been injured while he was splicing a wire to the "overhead trolley," which splicing wire came in contract with the wheel rail.

George H. Markham, another lineman in the employ of the appellant company, called as a witness for plaintiff, stated that line cars, equipped with a derrick carrying a wooden platform, are used in making repairs to the wires of the trolley system, and that those doing the work stand on the platform. The following questions were propounded to the witness:

"Q. Mr. Markham, did the Washington & Old Dominion Railway Company have any line cars in 1916?" To that question the defendant objected, and, the court having overruled the objection, the witness answered: "They had no line cars built for line work."

"Q. Were line cars generally in use by the electric railways for the purpose of making repairs in 1916?" To which question counsel for the defendant objected on the ground that it was not relevant to the issue. The objection was overruled, whereupon the witness answered: "All that I know of had them—not all, though, but a majority of companies had line cars."

Dr. James A. Gannon, surgeon for the defendant company, testified in behalf of the plaintiff's intestate that he attended Bland in the Georgetown Hospital, and that Bland was suffering from a fracture at the base of his skull, from which injury he died within about 12 hours after receiving it. Bland, shortly after his admission to the hospital and while he was conscious, made a statement to the witness, which was reported by him to the company. The witness said that he had no copy of the statement, and that he had never seen the report after sending it to the company.

On the part of the defendant testimony was introduced to the effect that Bland and Trammell were detailed to repair the trolley wire of the defendant company at Soap Stone siding; that Bland carried with him a coil of wire to make the repairs; that a ladder was raised to the trolley wire, and that a coil of wire carried by Bland was laid by him on the cross-ties of the track and against the iron rail; that Bland put one end of the coil of wire around his wrist and started up the ladder; that Bland and Trammell both knew that, if the wire carried by Bland on his wrist came in contact with the trolley wire, it would surely cause a shock, inasmuch as the coil of which it was a part was lying on the ground in contact with the rail; that Bland told Trammell to hold the ladder steady, but did not tell him to take the wire off the rail, or off the ground; that Trammell did not permit the ladder to move in any way, so as to cause Bland to fall; that the first thing that attracted Trammell's attention to Bland was when Bland uttered a grunt, as if something had hit him; that, when Trammell heard Bland grunt, Bland had arrived at the top of the ladder, and that his feet were still on the round of the ladder. After the introduction of evidence had been completed the defendant requested the court to instruct the jury as follows:

Instruction 1: "The jury are instructed as matter of law that, upon all of the pleadings and evidence in this case, their verdict should be for the defendant."

Instruction 1-A: "The jury are further instructed as matter of law that there is no evidence in this case tending to prove that witness Trammell was guilty of negligence, as alleged in the first count of the declaration

herein, and therefore their verdict should be for the defendant upon the first count of the said declaration."

Appellant seeks a reversal on the ground, first, that the evidence was insufficient to show that the death of Bland was caused by an electric shock, or by or through the negligence of his fellow servant, Trammell; second, that the court erred in permitting the witness Markham to testify, over the objection of the defendant, that line cars equipped with a safety platform were used by the majority of electric railway companies in the making of repairs to trolley and current-carrying wires; third, that the court erred in allowing the plaintiff to either impeach or attempt to impeach Trammell's testimony as to collateral matters brought out on cross-examination and not relevant to the issues raised by the pleadings; fourth, that in making statements not warranted by the evidence, and designed to excite the passions of the jury against the defendant, counsel for the plaintiff misconducted himself during his closing argument, and that therefore the court erred in denying defendant's motion to withdraw a juror and to discharge the jury from further consideration of the case.

[1] We are of the opinion that a reversal would not be justified on any of the grounds stated. To sustain the verdict of the jury, and the judgment entered on it, there must, of course, be some evidence tending to show, not only that Trammell was negligent, but that his negligence caused an electric shock to plaintiff, which brought about Bland's fall from the ladder and the consequent injuries from which he died.

If the proximate cause of the fall of Bland and the injuries caused thereby can be proven by direct evidence only, it must be said that no such evidence was submitted. No one testified that he actually saw Trammell drop the coil of messenger wire, or that he actually saw Bland place his end of the messenger wire in contact with the trolley wire, or that he actually saw the current of electricity enter the body of Bland and give the shock which threw him off the ladder. Nevertheless, all of those things were proven by circumstantial evidence just as effectively and convincingly as if they had been seen, noted, and declared by all the witnesses present at the time of the mishap. A witness did see Bland mount to the top of the ladder with one end of the messenger wire around his wrist, and did see Trammell at that time standing on the cross-ties holding the coil of messenger wire in his hand. That witness did not see what happened while his attention was diverted to the woods behind him, but on turning again to the scene of the repair work he saw Trammell holding the ladder, the coil of messenger wire lying on the ground, and Bland falling from the ladder. Twenty minutes later plaintiff's witness Coleman saw a wire hanging from the trolley wire and running to the coil of wire on the ground. The testimony was uncontradicted that, if the coil of messenger wire was left on the ground or touching either of the metal rails, an electric circuit would be established, which would give an electric shock to Bland when he brought his end of the messenger wire in contact with the trolley wire.

From those facts and circumstances, the jury, if it accepted them as true, was justified in deducing, first, that Trammell did let the coil

of messenger wire fall to the ground; second, that Bland put his end of the wire over the current-carrying trolley wire; third, that an electric circuit was thereby established, which gave to Bland an electric shock; and, fourth, that he fell from the ladder because of the shock.

Bland's fall could have been caused by a stroke of apoplexy, a sudden fainting spell, or a heart weakened by the physical strain of climbing the ladder. As those physical conditions were, however, mere possibilities at best, with no evidence whatever tending to show that they existed, and as Bland was proven to be in sound health just before he fell, a rational jury could hardly attribute the accident to any of them; much less could the jury reject as the proximate cause of the accident that which was plainly and reasonably deducible from the evidence submitted. The testimony in the case left no reasonable hypothesis to account for Bland's fall, other than an electrical shock, and as that could have been avoided if Trammell had retained in his hands the coil of messenger wire, we must hold that the evidence was sufficient to establish Trammell's negligence and to make out the case declared by plaintiff.

[2] The point made that the court erred in permitting the witness Markham to testify under objection that line cars equipped with safety platforms were used by the majority of electric railway companies in the making of repairs of current-carrying wires is not well taken.

The first count of the declaration charged that Bland received an electrical shock because of the *negligence of his fellow employee, Trammell,* and that as the result of the shock Bland was thrown to the ground, thereby receiving the injuries from which he subsequently died. In the third count it was alleged that the defendant company *failed to furnish plaintiff's intestate with sufficient equipment and* appliances for his use and protection in the making of repairs to its current-carrying wires, and that because of that failure he received the electrical shock and consequent injuries which caused his death.

The plaintiff was not required to elect on which count or counts he would stand at the trial, and Markham's testimony as to line cars was evidence offered and received under the third count. The court evidently regarded that testimony as insufficient to establish the allegations of the third count. The jury was accordingly explicitly instructed to find a verdict for the defendant on the *third* count, and to find a verdict for the plaintiff on the first count, *only in case it found that the accident was due to the negligence of Trammell as* charged in the first count. The jury found for the plaintiff on the first count, and for the defendant on all other counts. If Markham's testimony was erroneously admitted, the error was cured by the unmistakable instruction of the court, which left nothing for the consideration of the jury, except the negligence of Trammell and the allegations of the first count.

[3] In answer to a question on cross-examination, Trammell, defendant's witness, answered under objection that he had never been told not to talk about the case to Mr. C. W. Bland, father of plaintiff's intestate, and that he did tell Mr. Bland some few things, and practically all and exactly how it happened. That answer, of course, did not in any way injure the defendant. Subsequently, in rebuttal, plaintiff's

witness, C. W. Bland, was asked the following questions and the following proceedings were had:

"Q. Did Mr. Trammell, at the Union Station, tell you in substance as follows: That he and Edwin, meaning your son, went out to Soapstone siding to make some repairs; they put the ladder up against the wire, and Edwin, meaning your son, told him, Trammell, to hand him one end of the messenger wire and fasten the other end to the ladder, and hold the ladder while he, Edwin, did the work, and not to let it slip; did he tell you that in substance? A. Those are the very words he told me, exactly. * * *

"Q. I will ask you if you returned to Washington in company with Mr. Stevens, of North Carolina, two or three weeks after that, and did you and Mr. Stevens have a conversation with Mr. Trammell on this same subject on that occasion? A. Yes, sir. * * *

"Q. Did he refuse to make a statement to you and Mr. Stevens on that occasion? In order words, did he refuse to tell you how this thing happened?"

To this question counsel objected on the ground that the question was directed to a collateral matter, which could not be contradicted, and that the plaintiff was bound by the witness' answer on cross-examination. * * *

"The Court: This goes to the question of the contradiction, I assume?

"Mr. Douglas: Yes, sir; it is entirely preliminary to that, because I cannot get at just how the thing was.

"Mr. Lambert: It is not rebuttal, I submit. I note an exception.

"Q. Did he or not refuse at that time? A. Yes, sir; he did refuse to answer me."

This testimony was entirely consistent with the testimony of Trammell that he was not instructed not to talk to Mr. C. W. Bland, and is confirmatory of his testimony that he did talk to Mr. Bland about the case. It can therefore hardly be construed as an impeachment of Trammell's testimony in that behalf.

We do not think that the testimony of Bland in rebuttal, to which objection was made, prejudiced the defendant, and cannot see our way clear to reverse the judgment because Bland testified that Trammell, after having made one statement to him, refused to make another.

The serious question in the case arises out of what was said by counsel for plaintiff's intestate during his opening argument to the jury. In the course of that argument counsel referred to the fact that Dr. Gannon, a surgeon employed by the defendant, had reported to the company the injuries received by Edwin D. Bland and Bland's statement as to the cause of the accident. Counsel called attention to the failure of the company to produce the report, and to the answer of three of its officers that they did not have it. Counsel for defendant objected to that line of argument and said: "You cannot prejudice the defendant by making this kind of insinuation." To that objection counsel for plaintiff responded, in the presence of the jury: "For suppression of evidence—can't talk about it?" Whereupon the defendant moved the court to withdraw a juror and to discharge the jury from further consideration of the case, on the ground that plaintiff's counsel had misconducted himself by charging the defendant with suppressing evidence and in making an assertion not supported by the evidence. The court intervened at this point and ruled that the statement to which the objection was directed should not have been made. Counsel for plaintiff then withdrew the remarks on which the motion to discharge the jury was based. The motion to discharge the jury was denied, and the

court instructed the jury to disregard what had been said as to the suppression of evidence.

[4] Remarks of the kind to which defendant's counsel takes exception should never be made, unless supported by evidence admitted by the court. Unwarranted statements tend to misrepresent the facts, and are not commendable, inasmuch as attorneys are officers of the court, and it is their bounden duty to do nothing and to say nothing which may interfere with the orderly administration of justice as prescribed by law.

The overwhelming majority of the legal profession are most scrupulous in avoiding anything which might be construed as an imposition on the court as to law or facts, and that rule of conduct is even more binding on the professional conscience when it comes to the presentation of a case to a jury. Statements not warranted by the evidence are not likely to excite the passions or prejudices of a judge, who by training, education, and experience is on his guard against them. Such statements, however, when made to a jury, unlearned as to the rules of evidence, unaccustomed to the evaluation of evidence, and more open to the influence of gratuitous remarks, endanger an impartial verdict, a consummation which should be as distasteful to every member of the bar as it is to the judge on the bench. In the heat of argument, in the rare moments when the ardor of the advocate sweeps out of mind his duty as an officer of the court, the tongue will say things which it were better to have left unsaid in the interest of fairness.

[5] When such a slip is made, however, counsel, after his attention is called to it, should frankly and promptly counteract its influence and return to the straight path marked out by the ethics of his chosen profession. If counsel does that, and the court promptly instructs the jury to disregard the unjustified statements, it cannot well be assumed that the jury took no heed of the withdrawal and disobeyed the positive mandate of the court. Talmage v. Smith, 101 Mich. 370–374, 59 N. W. 656, 45 Am. St. Rep. 414; Tunnicliffe v. Bay Cities Consol. Ry. Co., 107 Mich. 261–264, 65 N. W. 226.

Where counsel persists in making statements, unsupported by the evidence and designed to prejudice the case of his opponent, where he makes a withdrawal only to repeat the offense as to other matters not in evidence, and thereby indicates lack of good faith and a purpose to mislead and bias the jury, we are not prepared to say that repeated withdrawals and repeated instructions would avail to remedy the evil done.

[6] Counsel had a right to comment on the proven fact that Dr. Gannon made a report to the company of Bland's injury and of Bland's statements as to the cause of the accident. We think he believed in good faith that he had a right to refer to the fact that that report had not been produced when demand for it was made, and are quite convinced that his charge of suppression of evidence was uttered on the spur of the moment, without due consideration. As his unauthorized statement was promptly withdrawn, and as the court instructed the jury to disregard it, we are of the opinion that the case should not be reversed for misconduct of counsel.

The judgment is affirmed, with costs.