## WALKER v. McLOUD.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 140.　Argued January 8, 1907.—Decided February 4, 1907.

The purchaser at a sale of property forfeited and sold under a statute can only enforce his demand for the property against parties actually in possession under a bona fide claim of right by showing that the sale was in strict compliance with the terms of the statute; and a sale on credit is not such a compliance if the statute provides for a sale for cash.

Even though a statute providing for forfeiture and sale of buildings erected on National lands of the Choctaw Nation may be valid, the title to the buildings is not forfeited by the mere act of building but the forfeiture must be enforced by valid action; and to deny to those erecting the buildings an opportunity to be heard would deprive them of their property without due process of law.

The person insisting on the forfeiture of property by another must show some legal right to insist on it; one who has violated an ordinance does not become an outcast thereby and lose his right to defend his title to the property claimed to have been forfeited.

The illegal sale by a sheriff of the Choctaw Nation is not ratified by instructions from the chief of the Nation to employ attorneys to sustain his act, or by the subsequent statutory appropriation by the General Council of the Nation for the employment of counsel to defend all suits against the Nation involving confiscation of buildings improperly erected on national lands.

138 Fed. Rep. 394, affirmed.

THE appellant, who was plaintiff below, appeals from the judgment of the Circuit Court of Appeals (138 Fed. Rep. 394), affirming a decree of the United States Court for the Central District of Indian Territory, dismissing the appellant's bill on the merits. 82 S. W. Rep. 908.

The appellant describes this action "as in the nature of ejectment on the equity docket, instituted for the purpose of securing possession of certain buildings and the right to the occupancy of the land on which they were erected, and to quiet plaintiff in his title and possession of the same and to

remove the cloud from the title." The appellant is the executor of the will of W. H. Ansley, who was the purchaser of the buildings, hereinafter referred to, at the sheriff's sale.

The facts necessary to state in considering the question decided are as follows: The defendant McLoud is a trustee under a deed of trust, which need not now be more particularly stated, and defendant Gowen is the receiver of the Choctaw Coal and Railway Company, which was a corporation created under the laws of the State of Minnesota. By the second section of the act of Congress of February 18, 1888, 25 Stat. 35, it was granted the right to take and use for all purposes of a railway, but for no other purposes, a right of way one hundred feet in width through the Indian Territory for its main line and branch. The tenth section of the act provided that the company should accept this right of way upon the express condition that it would neither aid, advise nor assist in any effort looking towards the changing or extinguishing of the present tenure of the Indians in their land, and would not attempt to secure from the Indian nations any further grant of land or its occupancy than was provided in the act; and that any violation of the condition mentioned should operate as a forfeiture of all the rights and privileges of the company under the act.

The Choctaw Nation on October 30, 1888, passed an act, the first section of which reads as follows:

"All non-citizens not in the employ of a citizen of the Choctaw Nation and not authorized to live in the Choctaw Nation under the provisions of existing treaty stipulations, who have made or bought improvements in said nation, are hereby notified that they are allowed to sell their so-called improvements to citizens, and if such non-citizens fail to comply with this section, then it shall be the duty of the sheriffs of the counties in which such improvements may be located to advertise the same for sale in thirty days; and sell the same at the appointed time to the highest Choctaw-citizen bidder for cash; one-half of which shall be paid into their respective

treasuries, and the other half into the national treasury. Provided, however, that if any such non-citizen fail or refuse to deliver the possession of such an improvement he shall be reported by the sheriff of that county to the principal chief, and by said chief to the United States Indian agent, to take proper steps for the removal and prosecution of such offender under section 2118 of the Revised Statutes of the United States. Provided, further, that a notice of sale shall be posted by the sheriff in three public places in his county, which shall be legal notice to all persons against whom this law may operate."

While the above acts were in force and during the years from 1889 to 1893, both inclusive, it is charged that the company, through its officers and agents, built certain buildings at the town of South McAlester, I. T., outside and beyond its right of way, illegally and in violation of such acts, and were using the same in behalf and in the interest of the company.

In 1895 William Ansley, who was a citizen of the Choctaw Nation, and a deputy sheriff of the county where the buildings were erected, wrote to the governor of the Choctaw Nation and subsequently made a report in regard to the buildings as being erected by the company outside of its right of way, and that they were controlled by the company, and he was then directed by the principal chief of the Choctaw Nation to proceed according to law to sell and dispose of the buildings which had been built by the company outside its right of way. The sheriff proceeded to advertise the buildings for sale according to law, and in June, 1895, sold some of them to the appellant's intestate for $270; and the sheriff accepted his note as payment, conditioned that the same should be paid as soon as the purchaser was put into or otherwise obtained possession. This note has never been paid. The property purchased was, as alleged, of the value of about $60,000, and the purchaser was the son of the deputy sheriff who made the sale. The reason the money was not paid at the time of the bid, as stated by the bidder Ansley, was that the property was held by the company and he was informed that it would take litigation

to obtain possession. Immediately after the sale the sheriff who made it reported his action to the Chief of the Choctaw Nation.

The appellant upon the trial offered in evidence the deposition of the deputy sheriff, who made the sale, in relation to this matter, in which he swore that "the Chief ratified my action as to the sale and payments of said property, and instructed me to proceed at once and employ attorneys to assist me in getting possession of the property for the purchasers, and I at once employed attorneys to assist the plaintiff, W. H. Ansley, in obtaining possession of the property sold by me as sheriff. Mosely & Smith, of Denison, Texas, a firm of lawyers, and Cole & Redwine, attorneys at South McAlester, were employed by the Chief of the Choctaw Nation to assist the plaintiff in obtaining possession of said property. In 1895 the Choctaw Council passed a special act, appropriating $1,500 to employ attorneys to represent the Choctaw Nation and to assist the plaintiff in obtaining possession of the property aforesaid. In the December following contracts employing the aforesaid lawyers were signed by Jeff Gardner, Chief of the Choctaw Nation, and all my acts as deputy sheriff aforesaid as to the sale and payments of the purchase price of the aforesaid property were accepted and ratified by the Choctaw Nation."

All that portion of the deposition above quoted was objected to on the part of the defendant, and the objection was sustained, and that portion was stricken out under the exception of appellant.

The appellant also put in evidence the act of the General Council of the Choctaw Nation, entitled "An act authorizing the principal chief to employ counsel," approved October 30, 1895, the first section of which reads as follows:

"SECTION 1. Be it enacted by the General Council of the Choctaw Nation assembled: That the sum of two thousand dollars ($2,000.00) is hereby appropriated out of any money in the National Treasury not otherwise appropriated, and

said sum to be placed to the credit of the principal chief, and to be by him used for and in behalf of the Choctaw Nation, in the employing of able and competent counsel to defend the interest of this nation in all suits now pending or that may hereafter come before the United States courts in any manner relative to the full and complete execution of the laws of the Choctaw Nation by the sheriffs of each and every county, in the confiscation of property of non-citizens who are now occupying lands or buildings, or who may hereafter occupy, not in conformity to the laws of the Choctaw Nation."

*Mr. W. N. Redwine*, with whom *Mr. Chester Howe*, *Mr. George R. Walker*, *Mr. Preslie B. Cole* and *Mr. J. O. Poole* were on the brief, for appellant:

The sole ground on which the Circuit Court of Appeals decided this case was one which had not been passed upon in either of the courts below, viz: That the act of the Choctaw legislature, under which the sale of the property in question was made, by its terms required that said sale be for cash. That this provision not having been strictly complied with, the sale was therefore void and of no effect.

If this non-compliance with the statute was the result of the sheriff, in his executive capacity, acting on his own initiative or through ignorance or carelessness, as an examination of every case cited in support of this theory will show to have been the case, there might be some weight to this contention. But where the variance from the strict letter of the law is by agreement of the parties and of the only parties having an interest or a right to be heard, a very different question is presented. As was said in an earlier decision of this court, in a case involving the legality of the proceedings of local officers to pass the title to land and therefore similar to the case at bar, "Where the act done is contrary to the written order of the king, produced at the trial, without any explanation, it shall be presumed that the power has not been exceeded; that the act was done on the motives set out therein, and

according to some order known to the king and his officers, though not to his subjects." *Strother* v. *Lucas,* 12 Pet. 438.

And in various decisions in this country this precise question has been considered, and it was held that though the statute required the sheriff to sell for cash, yet by agreement of the parties this might be altered and time allowed. 25 Am. & Eng. Ency. of Law, 2d ed., 768; *Chase* v. *Monroe,* 30 N. H. 427; *Sauer* v. *Steinbauer,* 14 Wisconsin, 70.

That the Choctaw Nation did not agree will not be contended, for it was a party to the very transaction. But it may be insisted that the Choctaw Coal & Railway Co. must be a party to such an agreement to bring the case within the rule above set forth. That would be true were it an execution debtor in sheriff's sale or owner of the equity in foreclosure proceedings. In such cases it would possess an interest which must be conserved. But such is not the case at bar. No interest in the property remained to the appellee company. It was from the beginning but an intruder, its only right in the Indian country being by virtue of the act of Congress granting it a right of way, the very terms of which provided that any act on its part "looking toward the change or extinguishment of the present tenure of the Indians in their lands, or any attempt to secure any further grant of land or its occupancy should operate as a forfeiture of all the rights and privileges of said railroad company under this act." Not only under the foregoing provision did the railway company forfeit its rights in the operation of its road in the Territory, but again and more specifically when, having been duly notified to dispose of its holdings in accordance with the act of the Choctaw legislature, approved October 30, 1888, it failed to comply with such requirements, did it lose and absolutely forfeit whatever rights and interest it may have had.

A defendant in ejectment who shows no title to the land in dispute cannot take advantage of technical imperfections in plaintiff's title. *McAllister's Lessee* v. *Williams,* 1 Tennessee, 334.

*Mr. John W. McLoud* and *Mr. Charles B. Stuart,* for appellees, submitted.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court of Appeals decided but one question in this case, and that one related to the validity of the sale of the property by the sheriff on credit instead of for cash. In our opinion that question was rightly decided by the court when it held such sale absolutely void, and it is unnecessary for us to refer to or decide any other.

The son of the deputy sheriff, who conducted the sale, bid off property worth $60,000 for $270, and gave his note for that amount, payable when possession was given him, or he, by some means, had otherwise obtained it. He has not yet obtained it, and the note has never been paid.

The Court of Appeals held the sale void, as in violation of the statute under which the sheriff assumed to sell. The proceedings of the sheriff were under the act of the Choctaw legislature, approved October 30, 1888, referred to in the foregoing statement. By that act it was provided that the sheriffs of the counties in which the improvements were located should advertise the improvements for sale for thirty days, and should "sell the same at the appointed time to the highest Choctaw citizen bidder for cash."

The sale was a clear violation of the provisions of the statute, under which alone there was authority to sell at all.

The appellant answers this objection by stating that the parties consented to the sale for credit instead of cash. We find no evidence of such consent, so far as the coal company was concerned or its receivers. The buildings were, as alleged by appellant, erected by the company or its receivers, although outside the right of way, and, therefore, as is claimed by appellant, they became forfeited to the Choctaw Nation. It is unnecessary to decide this question at present. But if the

property were to be taken away from the company or its receivers, on the ground of the alleged forfeiture, they certainly had the right to demand that it should be taken from them pursuant to law, and not in open violation thereof. When a party, whose only title to property depends upon its sale to him under a statute, demands possession of such property from one who is in possession under a *bona fide* claim of right, the party making such demand must show some right to it, and this obligation he does not meet, by showing that he purchased it under a sale, which was in plain violation of the very statute under which the sale took place. *Hockett* v. *Alston*, 110 Fed. Rep. 910. The coal company or the receivers, therefore, had great interest in this property, as owners, until, at least, their title was divested upon a valid sale. They never consented to any sale on credit.

The appellant asserts that the railroad or the receivers had forfeited the property by building outside the right of way, and hence they had no right to be heard as to the manner of sale, whether in violation of the statute or not. But, assuming the validity and applicability of the Indian statute, the title to the property did not become forfeited by the mere act of building. There must be at least some valid action looking towards the enforcement of the forfeiture. To assert that those who are in possession are intruders upon the land, and have forfeited their property, and therefore are not entitled to be heard upon the question whether those who claim the property have complied with the law, is to say that one in possession and claiming to be the owner may be deprived of his property without due process of law. On the contrary, he is entitled to insist upon obedience to law by those who assume to take his property by reason of an alleged forfeiture. To insist upon a forfeiture the person who claims it must show some legal right to insist upon it. In case of a sovereign State or nation, its conclusion to insist upon a forfeiture for breach of a, condition subsequent may be by legislation, *Atl. & Pac. R. R. Co.* v. *Mingus*, 165 U. S. 413, 431, and that legislation must be

followed in asserting and enforcing the forfeiture by those acting for the State. So the owners of this property, even if it be liable to forfeiture, may nevertheless insist upon obedience to the statute by those assuming to act under it. Their consent to its violation is most essential. They did not become outlaws by building outside of the right of way.

- It is also urged on the part of the appellant that the act of the sheriff was ratified both by the principal chief and also by the Council of the Nation. The only proof of the ratification by the principal chief (even if he had power to ratify, which cannot be assumed) is given in the deposition of the appellant's intestate, referred to in the foregoing statement of facts. Therein the sheriff said that the chief ratified his action as to the sale and payments on the property, and instructed him to proceed at once to employ attorneys to assist him in getting possession of the property for the purchaser. The statement that the chief ratified his action was a mere conclusion of law. It gave no facts upon which such alleged ratification was based, and was clearly inadmissible as proof of ratification. The same witness had already testified that before the sale he was directed by the Chief of the Choctaw Nation "to proceed according to law to dispose of the buildings which had been built by the Choctaw Coal and Railway Company off of its right of way." · It would hardly be supposed that he would at once ratify a violation of law in the conduct of the sale. But the proof of ratification by the principal chief is totally insufficient and is, as already said, a mere conclusion of law by the witness. And, as a separate and distinct reason, we find no proof of any power of the chief to ratify a violation of this act.

Nor is the alleged ratification by the General Council of the Choctaw Nation of any greater effect. This ratification consists in the passage by the General Council of the act approved October 30, 1895, and already referred to. It appropriates the sum of $2,000, to be used by the principal chief in the employment of counsel for the purpose of defending the interest of the Nation in all suits pending or that may thereafter come

before the United States courts, "in any manner relative to. the. full and complete execution of the laws of the Choctaw Nation by the sheriffs of each and every county in the confiscation of property of non-citizens who are now occupying lands or buildings or who may hereafter occupy, not in conformity with the laws of the Choctaw Nation."

Certainly there is nothing in that act which in any way ratifies or purports to ratify an illegal sale by a sheriff assuming to act under the law providing for sales by sheriffs of buildings erected on land outside the right of way of the railroad company. It appropriates money to defend the Nation in suits relative to the full and complete execution of the laws and nothing else; not a suspicion of any ratification of an illegal sale under those laws.

The record shows a gross violation of the act under which the sale was made, and an entire absence of any evidence showing a ratification of such act either by the principal chief, assuming he could ratify, or by the council of the Nation. The case is not one in which any court would strive to find a way to uphold such a proceeding.

Without going into the other questions which arise, it is sufficient to say that upon the ground above discussed the decree of the Circuit Court of Appeals is right.

*Decree affirmed.*