### NORRIS v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
October 3, 1929.

No. 4035.

Frederic L. Ballard, Allen Hunter White, and Charles I. Thompson, all of Philadelphia, Pa. (Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., of counsel), for appellant.

George W. Coles, U. S. Atty., and Charles Denby, Jr., both of Philadelphia, Pa., for the United States.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge. Any confusion or uncertainty in this case arises, not so much from difficulty in the legal question before the court, but from the manner in which the question is presented. To make this statement clear: If a demurrer had been filed by defendant to the first count in the indictment, it must necessarily have been overruled. This because the charge of conspiracy between Norris and Kerper to commit an offense against the United States, namely, to unlawfully transport liquors from Philadelphia to New York, was well laid, and a demurrer thereto, which for the purposes of the motion admits the facts, must necessarily fail. The crime being legally charged, the count is good, wholly aside from the question of the evidence necessary to sustain the charge.

In the same way, the case of United States v. Holte, 236 U. S. 140, 35 S. Ct. 271, 272, 59 L. Ed. 504, L. R. A. 1915D, 281, illustrates the proposition. There a woman subjected to an unlawful interstate transportation under the White Slave Act (18 USCA §§ 397–404) was indicted for conspiracy to commit the main offense with the person causing her to be transported. The indictment so charging was demurred to, and the court below sustained the demurrer. In doing so, the court, of course, assumed that the woman was not subject to indictment for the substantive offense, and that, although the offense could not be committed without her, she was not a party to it, but only the victim, and that therefore conspiracy to commit the offense could not lie against her. In reversing this decision, Justice Holmes said: "We do not have to consider what would be necessary to constitute the substantive crime under the act of 1910, or what evidence would be required to convict a woman under an indictment like this; but only to decide whether it is impossible for the transported woman to be guilty of a crime in conspiring as alleged."

In another portion of the opinion he said: "So we think that it would be going too far to say that the defendant could not be guilty in this case." The learned justice then gives a supposititious case by way of illustration, where an immoral woman should suggest and carry out a journey, with a hope of blackmailing the man, and should buy the railroad tickets or pay the fare, in which case she would be within the letter of the act of 1910, and no reason would be apparent in that case why the act should not be held to apply. Justice Holmes concludes the opinion with these words: "Therefore the decisions that it is impossible to turn the concurrence necessary to effect certain crimes such as bigamy or duelling into a conspiracy to commit them do not apply."

In other words, it is not impossible, under an indictment well laid for conspiracy between the man and woman to violate the Mann Act, to assume a set of circumstances which, if established, would show a conspiracy to commit the unlawful interstate transportation. So, in the case at bar, the indictment as drawn legally charged the offense of conspiracy to transport between Norris and Kerper, and there would be no difficulty in conceiving a set of facts which, if established, would sustain such an indictment, notwithstanding the conspiracy existed between the seller and the buyer.

Counsel for the government and for the defendant, recognizing this principle of pleading, agreed upon a stipulation of facts having the same force and effect as if the same were set forth in the indictment. Their clear purpose was, as frankly stated and repeated by the government's counsel in their argument, to bring before the court for decision the single question whether a buyer and a seller of liquors, where transportation and delivery is made in pursuance of the sale, can be together indicted for a conspiracy to transport. To limit the inquiry to this single question, government's counsel waived the second count in the indictment, and it is therefore not before the court. In seeking to have this question decided, counsel were in a measure unfortunate in selecting this particular case. This because it involves not a single sale, but many sales, because the seller was engaged in the business of sale and transportation of liquors in violation of the National Prohibition Law (27 USCA), because shipments were made by him in the name of fictitious consignors, and because the packages were falsely labeled as merchandise. These facts have a tendency to confuse the issue, as from them certain inferences or conclusions might be drawn, establishing, or tending to establish, an unlawful combination between the parties to transport the liquors so sold.

The learned judge conceded that the mere purchase of liquor is not an offense under the Prohibition Act, and that the purchaser cannot be convicted of aiding and abetting the sale; and he assumed, without deciding, that where there was nothing in the case but a simple sale, the purchaser cannot be convicted of conspiracy with the seller to make the sale. But with reference to conspiracy between buyer and seller to transport, he says: "The connection of the defendant Norris with the illegal transaction was decidedly more than that 'degree of co-operation that would not amount to a crime,' referred to by Justice Holmes in U. S. v. Holte. * * * Of course, mere knowledge that a crime is about to be committed by another does not make the inactive party a conspirator, nor will awareness, coupled with acquiescence and possibly expressed approval and encouragement, have that result. But, in respect of the transportation, Norris did far more than know and acquiesce. He also did more than merely let Kerper know that he was in the market for liquor. By his repeated orders for whisky, telephoned from New York to Philadelphia, he became party to an agreement which required Kerper to transport the liquor, and he promised to pay him for doing it. Thus he not only solicited but bound Kerper, by such obligation as the character of the transaction permitted, to commit the offense."

From this he concludes "that a conviction may be had of a buyer and seller of liquor for conspiracy to transport liquor, in a case where the agreement is that the delivery of the liquor sold is to be effected by transportation from the seller to the buyer." It is thus clear, from this broad legal conclusion, that the court treated the stipulated facts as raising the single question whether conspiracy can be maintained between seller and buyer, where delivery of the liquor is to be effected by transportation from the seller to the buyer. This is the precise question which the parties desired should be decided by this court. In the stipulated facts, there is but one buyer and one seller. The transportation and delivery were made by the seller at his expense, the sale being initiated by the telephone order of the purchaser, and the liquors so purchased were for the consumption of the purchaser and his guests.

The second finding, which the court holds is sufficient evidence of such an agreement between seller and buyer, adds nothing to the conclusion reached in his first finding, namely, where a purchaser orders the liquors from a bootlegger located at a distance, followed by transportation, delivery, and payment. If these facts were intended by the court to support a conclusion which could not be drawn from the mere fact of purchase, followed by transportation and delivery from the seller, the purpose of the parties to obtain a decision on the real question would be frustrated.

Counsel for both parties conceded at the argument on this appeal that the learned trial judge in his opinion made a clear and precisely accurate statement of all the facts in these few words: "Summarized, the stipulated facts are as follows: Norris was a

banker and resided in New York; Kerper was a bootlegger and had his residence and base of operations in Philadelphia. From time to time, Norris by telephone ordered whisky from Kerper in Philadelphia. Twelve different orders were given covering a period of over a year. Upon receiving each order, Kerper sent the whisky ordered by express from Philadelphia to Norris in New York, in packages disguised as paint, ink, olive oil, etc. The liquor was paid for by Norris from time to time, and was drunk by him and his guests. He did not sell or intend to sell any of it, nor did he take any part in its transportation, other than as above stated."

We assume, therefore, that the court did not intend in this recital of facts to narrow the broad legal proposition which he announced in his first conclusion. We will therefore consider and decide the interesting and very important question thus raised. The conclusion which we have reached is based on the following considerations:

First. It is conceded that, under the Eighteenth Amendment, and the Volstead Act passed to carry it into effect, the purchase of liquor is not made an offense. It follows that the purchase, as such, does not subject the buyer to punishment. This is perfectly clear from the act itself. Not only did Congress carefully exclude the purchaser from the penal provisions of the act as originally passed, but has taken no step to extend its provisions to the purchaser, in the 10 years of legislation which have since intervened. That the intention and purpose of Congress is in harmony with the act, as drawn, is thus made perfectly manifest.

Second. While the seller of liquor, who delivers it to the purchaser, is liable under the law both for the sale and transportation, the purchaser to whom the goods are delivered is chargeable with neither the purchase nor the transportation. It thus appears that while the legislative department of the government has deliberately and intentionally made the purchaser of liquor guiltless of any offense under the Prohibition Law, the executive department of the government seeks here, by indirection, to make of the same fact, namely, the purchase, a crime subjecting the purchaser to a maximum fine of $10,000 and imprisonment for a term of two years. Such a situation is scarcely conceivable, and yet that is the position of the government.

Third. Concerning the crime of conspiracy, it is a well-established principle that, where an offense is such that a concert of action between two persons is logically neces-sary to the completion of the crime, that is to say, the crime cannot take place without concert, a charge of conspiracy against the two persons to commit that crime does not lie. This is the language of Judge Thompson in the case of United States v. Katz (D. C.) 5 F.(2d) 527.

On appeal, the Supreme Court affirmed the soundness of this rule in United States v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986. Justice Stone, speaking for the court, said: "The overt act charged in each indictment was the sale of whisky by one defendant to the other. This is an offense under the National Prohibition Act; but as the defendants in each case were only one buyer and one seller, and as the agreement of the parties was an essential element in the sale, an indictment of the buyer and seller for a conspiracy to make the sale would have been of doubtful validity [citing a number of cases]. This embarrassment could be avoided in an indictment for a criminal conspiracy only if the buyer and seller were charged with conspiring to commit a substantive offense having an ingredient in addition to the sale, not requiring the agreement of two persons for its completion." See, also, Vannata v. U. S., 288 F. 424 (C. C. A. Second Circuit).

In La Rosa v. U. S. (C. C. A.) 15 F.(2d) 479, La Rosa was indicted with Martin and Belman for conspiring to sell, barter, transport, deliver, furnish, possess, and manufacture intoxicating liquor. It appears that the only understanding La Rosa had with Martin and Belman was that he would buy certain whisky from them and show them how to get it to his garage. The judgment of conviction for conspiracy was reversed on the appeal. Notwithstanding, there was evidence in the case from which it could be fairly said that La Rosa aided and abetted the transportation, yet Judge Rose, speaking for the Circuit Court of Appeals, declined to consider the question of conspiracy to transport, in effect holding that it was too unsubstantial to merit serious consideration.

In Becher v. U. S. (C. C. A.) 5 F.(2d) 45, 50, there was a charge of conspiracy against several defendants to commit different offenses. Liquor was found in the cellar of one of the defendants, Birnbaum, which had been delivered there, and he contended that he was merely a buyer, and that there was no proof that he was a conspirator with the others. Speaking for a unanimous court, Judge Learned Hand said: "We concede at once that merely as buyer he was not a party to the scheme in any criminal sense; that, on the contrary, the prosecution

was bound to involve him in the plan as a whole in some other sense."

Fourth. In the case of seller and buyer, transportation by the seller is a mere incident in the sale, and necessary to its completion by delivery to the purchaser. It is an inherent feature, an essential element, of the sale, which the seller had, on his part, to perform. The sale necessarily involves an agreement, a concert of action, between buyer and seller to effect the purchase, and it could not, with any reason, be said that a conspiracy would lie to do something which was an essential element of the sale.

Finally, under the authorities it cannot be held that the purchaser, as such, is guilty of aiding and abetting either the sale or the delivery, and the degree of co-operation necessary to constitute one a conspirator must be such as to amount to more than the mere aiding and abetting in the commission of the offense. The degree of co-operation attaching to the purchaser is fully discussed in State v. Teahan, 50 Conn. 92. That opinion concludes with these words: "The purchaser of liquor, by his offer to buy, induces the seller of the liquor to make the sale; but he cannot be said to 'assist' him in it. The whole force, moral or physical, that went to the production of the crime as such, was the seller's."

In Lott v. United States, 205 F. 28, 29, 46 L. R. A. (N. S.) 409 (C. C. A. 9th Circuit), the court said: "It is uniformly held that statutes prohibiting the sale of intoxicating liquors are directed against the act of selling only, and that the offense is committed only by the vendor or some one who aids him in selling, and that the purchaser and those who aid him in the purchase are not guilty of aiding or abetting in the commission of the offense."

The essential requirement of conspiracy is clearly set forth by the Circuit Court of Appeals for the Second Circuit, in the case of Lucadamo v. U. S., 280 F. 653. There the court shows that knowledge, acquiescence, or approval of the act, is not sufficient. To constitute a conspiracy, the evidence must show an intentional participation in the attempt to commit the offense. The lack of active co-operation between the seller and the buyer, generally speaking, is well stated in the case of State v. Teahan, 50 Conn. 92, supra, in which the court says: "We are satisfied that the purchaser is not an abettor of the offense within the meaning of the statute. The 'abetting' intended by it is a positive act in aid of the commission of the offense—a force, physical or moral, joined with that of the perpetrator in producing it. * * * The abettor, within the meaning of the statute, must stand in the same relation to the crime as the criminal—approach it from the same direction, touch it at the same point. This is not the case with the purchaser of liquor. His approach to the crime is from the other side; he touches it at wholly another point. It is somewhat like the case of a man who provokes or challenges another to fight with him. If the other knocks him down, he has induced, but in no proper sense abetted, this act of violence. He has not contributed any force to its production. He touches the offense wholly on the other side. The purchaser of liquor, by his offer to buy, induces the seller of the liquor to make the sale; but he cannot be said to 'assist' him in it. The whole force, moral or physical, that went to the production of the crime as such, was the seller's."

From the foregoing considerations we are of opinion that a sale of liquor, involving such transportation as is necessary to effect the delivery to the purchaser, does not subject the purchaser and seller to an indictment for conspiracy to transport. The judgment is therefore reversed.

BUFFINGTON, Circuit Judge, dissents.