### JOHNSON et al. v. UNITED STATES.*
### No. 7183.

Circuit Court of Appeals, Sixth Circuit.
March 9, 1936.

Wallace Muir, of Lexington, Ky. (Arthur Bryson, of Ashland, Ky., Francis E. Burke, of Frankfort, Ky., and William W. Meeks and Gayle A. Mohney, both of Lexington, Ky., on the brief), for appellants.

Mac Swinford, of Lexington, Ky., for the United States.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge. ·

Two indictments were returned against the three appellants, Pharoah W. Johnson, William Dow Johnson, and Orville E. Setters. The first, No. 5828, charged them and Beatrice Staton (not indicted) with having devised a scheme to defraud the United States by interfering with it in awarding a contract for the construction of a post office at Portsmouth, Ohio; also to defraud the Roche, Connell & Laub Construction Company, and to use the mails for the purpose of executing the scheme in violation of section 338, U.S.C., title 18 .(18 U.S.C.A § 338).

Indictment No. 5829 upon substantially identical averments charged appellants and Beatrice Staton (not indicted) with a conspiracy to defraud the United States in

violation of section 88, U.S.C., title 18 (18 U.S.C.A. § 88).

On motion of appellee, the indictments were consolidated. Appellants' demurrer and their motion to require appellee to elect under which indictment it would prosecute were both overruled. A motion by the Johnsons for a separate trial was also overruled. Appellants were convicted upon each indictment which, after consolidation, stood, of course, as single counts of the consolidated indictment.

Appellants assign as error (1) the denial of a directed verdict; (2) the action overruling the demurrer to indictment No. 5828; (3) the consolidation of the indictments and the refusal to require an election; and (4) the admission of evidence. The Johnsons complained also of the denial of a trial separate and apart from Setters.

There are certain undisputed facts.

█ Appellee desired to build a post office at Portsmouth, Ohio, and had given notice that bids would be received and opened at 1 o'clock November 30, 1934, in the office of the Procurement Division of the Treasury at Washington. The P. W. Johnson Construction Company (hereinafter called the Johnson Company) operated in Ohio and West Virginia. It was in effect owned and controlled by P. W. Johnson, its president. William Dow Johnson, a cousin of P. W. Johnson, was a superintendent of construction. Orville E. Setters was an employee.

P. W. Johnson set about to obtain the contract for the construction of the Portsmouth post office. He knew when and where the bids would be opened and that if a bid bore a postmark showing that it had been mailed in time to have reached the proper Washington office by 1 p. m. November 30th it would be considered, even though it should be received later than that hour.

As applicable to both indictments, appellants were charged with conspiring to secure the contract by the following fraudulent scheme to wit: That P. W. Johnson would be present on November 30, 1934, and hear the bids announced as they were opened; that a bid lower than the lowest received at the opening would then be prepared and mailed in an envelope bearing a postmark indicating that it had been placed in the mail in time to reach Washington for the openings on November 30.

The Johnsons met by appointment at the Turner Hotel in Portsmouth on the night of Tuesday, November 27, 1934, and talked from three to five minutes. Later they each stated in affidavits executed by them that on that occasion they discussed a contemplated bid on the Portsmouth job. It is fair, however, to say that they both repudiated these admissions while on the witness stand.

After the conference, Dow Johnson returned to Hillsboro and P. W. Johnson lodged at the hotel. On the next morning he left with the wife of the proprietor a large unsealed envelope to be delivered to Dow Johnson. The envelope contained a "Form of Bid" on the Portsmouth job with the blank spaces for the amounts left unfilled. It also contained another unsealed envelope which P. W. Johnson had addressed to the "Supervising Architect, c/o Assistant Director, Procurement Div., Public Works Branch, Washington, D. C.— Federal Warehouse Bldg." On that morning he telephoned Dow Johnson that he had left the bid at the hotel and directed him to get it that night; to obtain lower prices for steel, heating, and plumbing than those contained in a memorandum left with the papers, if possible; otherwise to fill in the blanks in the form in accordance with the memorandum and seal and mail the addressed envelope.

Dow Johnson returned to the hotel on Wednesday night and was handed the envelope with its inclosures. He testified that having failed to get lower prices on plumbing, heating, and steel, he left Portsmouth about 7 or 8 o'clock that night and drove to Garrison, Ky., twenty miles away, where he lived with his father-in-law, and that on the next morning he filled the blanks in the "Form of Bid" in his own handwriting, making the bid of the Johnson Company "One Hundred Eighty-Eight Thousand Nine Hundred Dollars ($188,900.00)," and after inclosing it in the addressed envelope left by P. W. Johnson, mailed it at the Garrison post office about 12:30 p. m. on Thursday, November 29. However, there is substantial evidence that it was not mailed on Thursday. The postmistress, Mrs. Setters, attended the office on that date, Thanksgiving Day. She remembers handling no such letter. If it had been mailed on that day, it would have reached Washington about 11 o'clock on Friday It did not arrive until 9 a. m. December 3.

P. W. Johnson left Portsmouth on the morning of November 28 by automobile and reached Washington not later than 1

o'clock on Friday, November 30. He went to the Federal Warehouse Building where the Portsmouth bids were to be opened. Robert L. Garabaldi, senior clerk in the Public Works Branch of the Procurement Division of the Treasury, and one member of the committee selected to open the bids, testified that while they were being opened and announced he saw P. W. Johnson, whom he knew, standing near a supporting pillar in the room with a piece of paper in his hand. Johnson made no complaint at that time that his bid had not been received. The lowest bid read was that of Roche, Connell & Laub, to wit, $191,000. Johnson admitted that he was in the building and testified that he left it about 4:30 p. m., that he left Washington about 5 o'clock, drove to a point in Maryland, remained overnight and arrived at Cumberland, Md., Saturday morning, December 1.

Appellant Setters was working for the company at Uhrichsville, Ohio. He was a son of Mrs. Setters, the postmistress, and a friend of Beatrice Staton, assistant postmistress. He was in Garrison on Thanksgiving Day and he and Dow Johnson saw each other, but there is no positive evidence of any communication between them.

Beatrice Staton testified that she arrived at the office about 7:20 on Saturday morning, December 1; that Orville Setters came there with his mother and gave her a letter (Appellee's Exhibit No. 2) to mail addressed to the Supervising Architect at Washington and asked her to predate the postmark to show that it had been mailed on November 29; that he told her she would be well paid for it; that she predated the postmark and mailed the letter and that at Setters' request she gave him an impression made with the dating stamp set for November 29. It is undisputed that Setters was at the post office at Garrison about 7:30 Saturday morning. Beatrice Staton testified that he gave her the envelope (Exhibit 2) previously identified as the one reaching Washington on December 3 at 9 a. m., inclosing the bid upon which the Johnson Company was awarded the Portsmouth contract as low bidder. It was undisputed that this was the same envelope addressed by P. W. Johnson and passed by him to Dow Johnson.

Appellee was permitted to introduce two other envelopes, Exhibits 8 and 9. Exhibit 8 contained the Johnson Company's bid on the Montgomery, W. Va., post office. The postmark on its face showed that it was mailed at Garrison, September 24, 1934, and that on the back indicated that it was received in Washington September 27 at 3 p. m. Exhibit 9 contained the bid of the Johnson Company for remodeling the courthouse at Parkersburg, W. Va., the postmark on its face showed that it was mailed at Garrison on September 6, 1934, and that on the back indicated that it was received in Washington on September 10. The bids on the Montgomery job were opened on September 25 and those for the Parkersburg job on September 7. The Johnson Company bids were therefore received late on each occasion, and each bid was lower than the low bids announced at the regular openings. P. W. Johnson admitted that his company was a bidder upon each of these jobs. Beatrice Staton testified that she predated each of these envelopes at the request of Setters.

We think the evidence established the guilt of appellants. As applicable to indictment No. 5829 the jury was justified in believing beyond reasonable doubt that appellants and Beatrice Staton had conspired and combined to defraud the United States by interfering with one of its regular governmental functions through trickery and deceit, and at least eleven of the twelve alleged overt acts were supported by substantial evidence.

As applicable to indictment No. 5828, the jury might well believe beyond a reasonable doubt that appellants had devised a scheme to defraud not only the United States, but the Roche, Connell & Laub Company as well, whereby they would ascertain the lowest regular bid on the Portsmouth job and then submit a lower bid bearing a false and fraudulent predated postmark, and that they used the mail to forward the scheme.

On the motion for peremptory instructions, we are of course not concerned with contradictory or explanatory evidence, but upon the question whether there was substantial evidence to support the verdict, we think there is an irresistible inference that Dow Johnson filled the blanks in the form furnished him by P. W. Johnson with the bid of the Johnson Company after he had been advised by or through P. W. Johnson of the lowest bid (that of Roche, Connell & Laub Company) announced at Washington on November 30, and that in order to give the bid the appearance of fair dealing and regularity, he delivered it to Setters, who, with the connivance of Beatrice Staton, forwarded it under a false and fraudulent

predated postmark. If the transaction was in good faith, we see no reason why P. W. Johnson might not have himself completed the bid at Portsmouth on November 28 and either mailed it then and there, or carried it to Washington in person. Again, if it was necessary to turn the bid over to Dow Johnson, Dow could have mailed it before he left Portsmouth instead of carrying it to Garrison.

■■ The jury might well have given credence to Garabaldi, and Beatrice Staton, and upon the assumption that it did, the fraudulent scheme is apparent. Exhibit 2 was mailed at least eighteen hours after the biddings had closed. The bids had been announced and P. W. Johnson knew the lowest one. The Johnson Company's bid was not carried to the Garrison post office inadvertently. The use of that office is obvious. Setters, an employee of the company, was an intimate friend of the assistant postmistress. True, there was no positive evidence that P. W. Johnson conveyed the information acquired at Washington either to Dow Johnson or Setters, but this was unnecessary. Evidence of every detail relating to the means employed was not required. Langley v. United States, 8 F.(2d) 815, 819 (C.C.A.6). The existence of a conspiracy may be shown by inference, Israel v. United States, 3 F.(2d) 743 (C.C.A.6), or by circumstances. Remus v. United States, 291 F. 501 (C.C.A.6); Zottarelli v. United States, 20 F.(2d) 795, 798 (C.C.A.6).

■■ There is no merit in appellants' demurrer to indictment No. 5828. Their contention is that the predating of the postmark upon Exhibit 2, after it had been placed in the mail, was not a violation of section 338, U.S.C., title 18 (18 U.S.C.A. § 338), but the indictment alleges the inducement and persuasion of Beatrice Staton to predate the postmark as a part of the fraudulent scheme and that for the purpose of executing it, Exhibit 2, predated, was placed in the mails. United States v. Mitchell, 36 F. 492, 1 L.R.A. 796 (D.C.) is inapplicable.

■■ There was no error in consolidating the indictments. Appellants were the only defendants in each, and the charges in one were for acts or transactions connected with those in the other. In such a situation specific authority for consolidation is found in section 557, tit. 18, U.S.C., 18 U. S.C.A. § 557. See, also, Williams v. United States, 168 U.S. 382, 390, 18 S.Ct. 92, 42 L.Ed. 509.

■■ It was not error to deny appellants' motion to require the district attorney to elect upon which indictment they would be prosecuted. Each alleged a distinct statutory offense, and indictment No. 5828 required proof of facts which indictment No. 5829 did not. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306; Beddow v. United States, 70 F.(2d) 674, 676 (C.C.A.8); United States v. Goldsmith, 68 F.(2d) 5, 7 (C.C.A.2). Appellee was not required to abandon either, and both might be tried at the same time unless some substantial right of appellants was prejudiced thereby. Pointer v. United States, 151 U.S. 396, 403, 14 S.Ct. 410, 38 L.Ed. 208; Williams v. United States, supra; Kelly v. United States, 258 F. 392, 402 (C.C.A.6); Castellini v. United States, 64 F.(2d) 636, 637 (C.C.A.6). The matter rested in the court's discretion, and there is nothing in the record to indicate an abuse of it.

■■ The basis of the motion by the Johnsons for a trial separate and apart from Setters was that written confessions made by Setters after the termination of the alleged conspiracy and a letter written by him to Beatrice Staton on February 3, 1935, and which confessions and letter appellee intended to and did in fact put in evidence, were prejudicial to them. This motion, like the matter of election, presented a question to be determined by the court in the exercise of its judicial discretion. There was no reversible error in denying it or any indication that appellants were prejudiced thereby. When the confessions were received in evidence, the rights of appellants, P. W. and Dow Johnson, were carefully protected. The jury was instructed that the confessions were competent only as against Setters, that they were not competent as against the Johnsons, and that the jury would not consider them as having any bearing upon their guilt or innocence. See United States v. Ball, 163 U. S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300; Cochran v. United States, 41 F.(2d) 193, 198 (C.C.A.8); Dowdy v. United States, 46 F.(2d) 417, 421 (C.C.A.4). There is nothing in the Setters letter tending to implicate the Johnsons.

■■ Appellants objected to the introduction of Exhibits 8 and 9 and the testimony of Beatrice Staton with reference

thereto upon the ground that this evidence violated the general rule against evidence of other offenses. The evidence was admissible. It fell within the exception to the general rule "which admits evidence of acts of a similar character at or about the same time, with like alleged fraudulent purpose, as bearing upon defendant's motive or intent; for example, as proving a fraudulent or criminal scheme." Shea v. United States, 236 F. 97, 102 (C.C.A.6); Wood v. United States, 16 Pet. 342, 10 L.Ed. 987; Grant v. United States, 268 F. 443, 448 (C. C.A.6); Worden v. United States, 204 F. 1, 5 (C.C.A.6); Tincher v. United States, 11 F.(2d) 18, 21 (C.C.A.4). The evidence was relevant as tending to show the existence of a conspiracy to defraud the United States as alleged in indictment No. 5829; and of a scheme to defraud the United States as alleged in indictment No. 5828.

There is no reversible error on the record, and the judgment is affirmed.