**LAMBERT v. UNITED STATES.**

No. 8832.

Circuit Court of Appeals, Fifth Circuit.

Feb. 24, 1939.

Rehearing Denied March 25, 1939.

Thos. Arthur Edwards, of Lake Charles, La., for appellant.

Harvey G. Fields, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La.

Before SIBLEY, HUTCHESON and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, a physician, was indicted in four counts for selling, and in a fifth count for conspiracy to sell narcotics, to one Christian, in violation of the Harrison Narcotic Act, 26 U.S.C.A. § 1040 et seq. He was acquitted on the substantive counts, convicted and sentenced on the conspiracy count. By his appeal he assails the verdict as unsupported by the evidence, and as inconsistent with itself because it acquitted him on the only substantive count submitted to it, while convicting him of conspiracy. He assails the trial as attended with such erroneous rulings on evidence by, and comment and actions of, the trial judge, as to deprive him of a fair trial.

The rulings on evidence complained of are (1) the admission of evidence as to what appellant paid for narcotic drugs, and his acts in furnishing them to Christian, occurring a long time before, and having no relation to the substantive offenses charged, and therefore, as appellant claims, to the conspiracy to convict him; (2) the limitations placed on appellant's cross examination of Government witnesses, by which it is claimed he was prevented from showing that no conspiracy or illegal arrangement was entered into.

The actions of the trial judge complained of as depriving appellant of a fair trial are the brusqueness and severity of some of his remarks, and actions occurring during colloquies with appellant's counsel, over his efforts and conduct in offering and in objecting to, evidence. Resulting finally in the imposition of a fine and an order to the marshal to put him in jail, later rescinded, these colloquies are so bound up with defendant's efforts at cross examination, and are so illuminative of the atmos-

HOLMES, Circuit Judge, dissenting.

phere of the trial, that we set them out in a note. [1]

As to the verdict's want of support in the evidence, appellee points out that while appellant did move for a verdict at the close of the Government's case, it did not renew the motion when all the evidence was in.

It answers the claim of inconsistency in the verdict by insisting (1) that there was no inconsistency, because appellant could have been guilty of a conspiracy to sell without being guilty of the actual sale; and further, that if there is evidence to support conviction on the conspiracy count, appellant may not complain because he was not also convicted on the substantive count.

It answers the exceptions to the rulings on the evidence that these were not well taken, but if they were, no substantial prejudice resulted to the appellant therefrom; while as to the comment and action of the court complained of as depriving him of a fair trial, it insists that appellant's counsel brought it on himself, by his obstreperous, if not contumacious conduct,

---

[1] The Government's witness, Dr. Hargrove, being under cross-examination, appellant's counsel asked this question;

"Q. Doctor, did you at any time confederate or conspire with Dr. Lambert to bring about this sale, or any other sale to this man, or any one else? A. I did not consider it so.

"Q. You can answer that question yes, or no, Doctor, can't you?"

Whereupon objection that the question was improper, because it in effect called for a legal conclusion, was made and sustained.

An argument ensuing, the Judge ruling that the witness was really being asked for a legal conclusion, and Edwards contending differently, the following colloquy was had.

"Mr. Edwards: I object to the attitude of the Court in this case towards me. I have tried to conduct myself in the best manner that I know how, but the Court keeps continually jumping on me in the presence of this jury and it can have no other effect than to prejudice the minds of the jury against me and my client in this case. I am simply trying to get some facts from this witness which I think I am entitled to have, and which the Court seems to object to me trying to get.

"The Court: "What I am objecting to, Mr. Edwards, is your continual habit of jumping in and arguing with me, in the face of every ruling I make. Now I am going to have my rulings respected if I have to put you in jail. Go ahead.

"Mr. Edwards: I will withdraw the whole line of inquiry and start over again."

Thereafter the witness was asked substantially the same question, and the objection was sustained, the Court saying: "Now, Mr. Edwards, I want you to stop this. Take up some other subject because I am not going to let you proceed with this one."

There was an exception and argument by Mr. Edwards that he thought he had a right to ask the questions and make his record up a ruling by the Court that he could have his record, but "I am not going to sit here all day talking about the same matters."

The witness was then questioned as to whether he agreed with Dr. Lambert to commit any act or crime with reference to Christian in violation of any laws, State or national; Objection sustained, and there was an exception.

The same questions in substance, were asked and the same objections made, when Dr. Vernon Hargrove was on the stand, whereupon the Court said: "I have told you, Mr. Edwards, you couldn't ask that question. Now you know what you can ask and what you can't, and I don't want to have to warn you any more about this."

Later on, when another Government witness was on the stand, counsel for defense made an objection which the Judge thought frivolous, and he said:

"Now, Mr. Edwards, I am getting tired of this method of conduct on your part, and I am going to stop it, if I have to fine you."

"Mr. Edwards: I take a bill of exceptions to the Court's remarks, and I object to them being made in the presence of the jury; it could have no effect other than to prejudice me and my client in the eyes of the jury."

"The Court: Mr. Edwards, I told you to shut up.

"Mr. Edwards: I am not going to shut up. I am going to talk as long as the interest of my client demands.

"The Court: Enter a fine of five dollars against Mr. Edwards, Mr. Clerk.

"Mr. Edwards: I will go to jail and rot in there for the rest of my life, but I am going to represent my client as I see fit.

"The Court: Mr. Marshal, take Mr. Edwards and put him in jail.

"Mr. Edwards: Wait a minute, you fellows, let me get my papers before you drag me off this way.

"The Court: Bring him into my office. Court will adjourn until tomorrow morning, at 9:30."

and after all, it does not appear that any prejudice resulted from what occurred.

We agree with appellee that the inconsistency of a conviction on one count and an acquittal on others, where the evidence is sufficient on them all to sustain conviction, is not an inconsistency of which a defendant in a criminal case may complain. Such inconsistency as there is is in his favor. He may complain only of a verdict which is without support in the evidence. This he may do only when either he has in a timely way moved for an instructed verdict, or the verdict against him is, on the record, so manifestly unjust as to require the court to notice it, of its own motion. Appellant having failed to renew it at the close of all the evidence, waived the motion he made at the close of the Government's case for directed verdict, and may not, therefore, have a reversal here for want of evidence, unless an examination of the record, upon the court's own motion, shows that the conviction was wholly unsupported and manifestly unjust.

In view of appellant's complete acquittal by direction, and by the jury's verdict on all the counts charging him with aiding and abetting in the sales to Christian, and of the state of the record as to the conduct of the trial, we have of our own motion carefully examined the evidence. Finding no support in it for appellant's conviction on the conspiracy count, we reverse the conviction as unjust.

The theory of the indictment in the four substantive counts, and in that charging conspiracy is that appellant, acting with the Hargroves, senior and junior, first conspired to sell, and then carried out the conspiracy by selling, morphine to Christian. There is nothing legally wrong with this theory.

Appellant could have been guilty of a conspiracy to sell, and also of aiding and abetting in the sale. The difficulty here is with the proof. All that it shows is that appellant acted with Christian in his efforts to purchase. It does not show that he was in any sense acting in concert with the Hargroves, the sellers. His concert was with Christian, the purchaser, not with the Hargroves, the sellers. Under the evidence he could no more have been held guilty of a conspiracy to sell, than could Christian. c/f Lott v. United States, 9 Cir., 205 F. 28, 46 L.R.A.,N.S., 409; Norris v. United States, 3 Cir., 34 F.2d 839; United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L. Ed. 986; Young v. United States, 5 Cir., 48 F.2d 26.

This is not to say that on different evidence Lambert could not have been found guilty of a conspiracy to sell, and of aiding and abetting in the sale. c/f Smith v. United States, 8 Cir., 50 F.2d 46. It is to say, though, that proof under charges of conspiracy to sell and of selling, that one was acting with the buyer to effect a purchase, is not proof that he was acting with the sellers to effect a sale. Every fact and circumstance in the record points to appellant as an aider and abettor of Christian; not a single one points to him as an aider or abettor of the Hargroves. The District Judge, seeing that this was so, as to the substantive sale counts, 2, 3 and 4, properly instructed a verdict for defendant on these. The jury, seeing that it was so as to the first count, properly acquitted him of aiding and abetting in the sale charged in that count. The same evidence which failed to establish that he aided and abetted in these sales, likewise failed to establish that he was a party with the Hargroves to a conspiracy to make these, or any other sales, of morphine, to Christian.

There was plain error, therefore, apparent on the face of the record in letting the case go to the jury, and in thereafter letting the verdict stand, for which the judgment must be reversed.

There was reversible error, too, in the complained of rulings on evidence, and in the District Judge's actions and comments in the course of the trial.

Directly charged in the indictment with having conspired with the two Hargroves to commit "offenses against the United States, viz. violations of the Harrison Anti-Narcotic Act", defendant was entitled, on cross examination, to sift thoroughly the witnesses against him to show that he had made no agreement with these witnesses to sell morphine to Christian and to make clear all that was said and done and intended. The questions asked and excluded were perhaps too general, and were close to asking the witnesses the very questions the jury were to answer by their verdict. See United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; United States v. Sauls, 4 Cir., 65 F.2d 886; Miller v. United States, 5 Cir., 71 F.2d 361, 362; Hamilton v. U. S., 5 Cir., 73 F.2d 357; Walker v. McLoud, 204 U.S. 302, 27 S.Ct. 293, 51 L.Ed. 495. Counsel seemed to think

that by rejecting these questions the court was denying him the right to cross examine both positively and negatively. Though we do not think that was the purpose or effect of the rulings, the misunderstanding, pursued by counsel with persistence, perhaps with contumacy, caused so serious and heated a disagreement with the Court and an atmosphere so tense as to hinder, if not entirely prevent, a fair trial.

■ If it is replied to this that it was the untactful, contentious, disagreeable, and almost personally offensive manner in which appellant's counsel conducted his case which brought down upon him the very mildly disciplinary action of the court, the record plainly shows that appellant's counsel was, in good faith, if not with good judgment, tact and finesse, endeavoring to represent his client to the best of his ability. And in the end it was not counsel, but client, who suffered from his counsel's irascibility and provocativeness, and the District Judge's response to it. In situations of this kind, while the Judge should certainly preserve and protect the dignity of the court the greatest care should be exercised in doing it, so as not to react upon the defendant himself, who at least as to the controversy between court and counsel, is a wholly innocent bystander.

■ It was error too, to permit testimony as to the purchases of morphine made, and as to prices paid for morphine by appellant long prior to and wholly unconnected with the matters for which he was on trial; as it was to permit testimony as to transactions between appellant and Christian also prior to and unconnected with the indictment charged.

■ It may not be doubted that in prosecutions for conspiracy, evidence of similar acts committed at or about the same time with a fraudulent purpose, is admissible as bearing on motive or intent in proving a fraudulent or criminal scheme. John-son v. United States, 6 Cir., 82 F.2d 500. But the evidence offered and complained of here threw no light on appellant's motive or intent in connection with the charges for which he was on trial. Indeed, there was no issue on that point. Appellant freely admitted that he took Christian to the doctors to help him get morphine, while vigorously denying that he was engaged in any conspiracy or concert of action with the Hargroves. The evidence overwhelmingly established this, and jury and judge so found on the four substantive counts. The objected to evidence then, was without relevance to the charge for which he was on trial. Its introduction could have had but one effect, to prejudice him in the eyes of the jury, and tend to convict him, because of prior conduct having no connection with, or relation to, the offense for which he was on trial.

■ In the event of another trial, though no point was made upon it, we think we should call attention to a palpable error in the charge, upon the question of reasonable doubt.[2] It is erroneous because it in effect requires the defendant to acquit himself, rather than requiring the Government to convict him. Subject to only one interpretation, it could have had only one effect upon the jury to have them believe that it was the defendant's duty, by his evidence, to raise a reasonable doubt as to his guilt, and that unless his evidence did so, he should be convicted. Instead, in short, of requiring the Government, by its evidence, to establish defendant's guilt, beyond all reasonable doubt, thus putting the burden on it to convict defendant, the charge required the defendant, by his evidence, to raise a reasonable doubt in his favor, and thus put upon him the burden of acquitting himself as innocent.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

---

[2] "If the evidence offered by the Government outweighs that offered by the defendant, or is equally balanced, and you come to the conclusion based on all of the evidence that is presented, the witnesses who took the stand, the documentary evidence that might have been offered, and if that offered by the Government outweighs that offered by the defendant, taking the testimony and evidence as it has been presented, and applying to it the law given to you by the Court, you are convinced beyond a reasonable doubt that the Government has failed to make out a case, then it is your duty to acquit. On the other hand, if you feel, after weighing all of the evidence that has been presented by both sides, that that of the defense outweighs or is equally balanced with that offered by the Government, after applying the law as given to you by the Court, then you should acquit, but if it fails to balance or equal that offered by the Government and there is not that reasonable doubt about which I have spoken, then it is your duty to find the defendant guilty as charged."

HOLMES, Circuit Judge (dissenting).

The facts in this case, as established by the undisputed evidence and the verdict of the jury, are as follows:

Appellant was a practicing physician who had registered and paid the special tax, as required by 26 U.S.C.A. §§ 1383, 1384, when he began treating a man by the name of Christian, who had formerly been addicted to the use of narcotics. Christian had a chronic complaint, but could not be classed as a person having a bona fide need for narcotics and was not so regarded by other doctors. Appellant, almost immediately, began to supply his patient with morphine, not by prescription as is usually done by legitimate practitioners, except in emergencies and in bedside treatment, but by dispensing the drug himself, charging therefor about ten times the cost of the drug.

After supplying Christian for several years at a profit of two or three dollars per day, appellant was indicted, entered a plea of guilty, paid a fine, and surrendered his license to dispense and administer narcotics. Almost immediately thereafter, he took Christian a distance of about one hundred miles to see a doctor named Hargrove, whom appellant persuaded to agree to supply narcotics to Christian at the same rate of pay he had received, prescriptions to be written therefor in the names of patients whom Dr. Hargrove attended, and filled by the son of Dr. Hargrove, a druggist. Pursuant to this arrangement, Christian made many purchases from the Hargroves, each purchase being of ten, fifteen, or twenty grains of morphine at one dollar per grain, none of the drug being in or from the original stamped package, as required by 26 U.S.C.A. 1043 (a), and none of the prescriptions being for a legitimate medical use or bearing the name of the patient to whom the drug was sold, as required by 26 U.S.C.A. 1044 (c) (2). That these sales constituted violations of the Harrison Narcotic Act is too clear for discussion, and the verdict of the jury establishes the formation of a criminal conspiracy, in violation of 18 U.S.C.A. § 88.

There was no error in the admission of testimony relating to sales of morphine by appellant to Christian prior to the formation of the conspiracy. It showed that appellant had been furnishing narcotics to Christian until he lost the privilege of dealing in such drugs. It is not disputed that the transactions with the Hargroves occurred immediately thereafter. It was material to show the whole course of dealing between the parties. Moreover, it tended to refute the contention that appellant was actuated by humanitarian motives and had no financial interest in the transactions between Christian and the Hargroves. Grayson v. U. S., 6 Cir., 272 F. 553, 558, Certiorari denied, 257 U.S. 637, 42 S.Ct. 49, 66 L.Ed. 409; Madden v. U. S., 9 Cir., 20 F.2d 289, 294, Certiorari denied Parente v. United States, 275 U.S. 554, 48 S.Ct. 116, 72 L.Ed. 423.

Error is assigned to the refusal of the court to require Dr. Hargrove to give a categorical answer to the question, "Doctor, did you at any time confederate or conspire with Dr. Lambert to bring about the sale or any other sale to this man or anyone else?" The question was answered by the statement, "I did not consider it so"; but appellant insisted upon a yes or no answer, to which appellee objected. Since an answer in simple negative form could have had no more probative value than that actually given, the error, if any, was not prejudicial, and affirmance should follow under 28 U.S.C.A. § 391.

It must be conceded that the question was improper and that the ruling of the court was correct; but the majority finds that counsel for appellant may have been misled, and that, due to his obstinate insistence upon the question, an unpleasant scene was provoked which operated to the prejudice of appellant. Even if it be conceded that a reversal should be predicated upon the failure of the court adequately to protect appellant against the obstinacy or lack of erudition of his own counsel, the record in this case does not support the conclusion. The following is taken from the seventh and eighth special bills of exception preserved by appellant, rather than from the narrative of the testimony, because they present verbatim what appellant contends occurred, the elder Hargrove, one of the alleged conspirators, being on the witness stand: "The Court: The words, 'conspire' or 'confederate,' are susceptible of legal interpretation, Mr. Edwards, and what you are really asking him to do is to interpret the meaning of those words. Now go on with something else."

This ruling was excepted to by counsel, who insisted upon making his record, and was permitted to ask substantially the same question twice. The court sustained objections thereto, and exceptions were duly

taken and allowed. Upon the third repetition of the question, an objection being made, the court ruled: "The Court: You may ask him, Mr. Edwards, if he made any agreement with respect to these narcotics, but whether or not he was acting in violation of the law is a question of law."

Subsequently, when another witness (the younger Hargrove, also an alleged conspirator) was under cross-examination, the following occurred:

"By Mr. Edwards: Q. Did you and Dr. Lambert and your father have any conversation or conference or confer together about violating any law?

"Mr. Hardin: Now, Your Honor, I object to that. That is the same thing he went over with the other witness that Your Honor ruled out.

"The Court: I have ruled on that objection and sustained it, Mr. Edwards. I have told you that you may ask these witnesses if they had any agreement about the delivery or sale of narcotics, but whether or not it was a violation of the law is a matter of law that the witness cannot pass on. You may ask him about any agreement, if any agreement was arrived at with regard to the sale of narcotics, but he cannot express any opinion about whether they agreed to violate any law.

"By Mr. Edwards: Q. Did you have any agreement about the sale of narcotics to this man Christian? A. The only agreement we had was that I was to let Mr. Christian have this morphine—

"Q. (interrupting) That was with your father, but did you all have an agreement together that you were to sell him morphine when and if he wanted it in violation of any law?"

Thus it clearly appears that the court not only instructed counsel as to the proper procedure and the manner in which the line of inquiry might be pursued, but actually succeeded in getting him to ask the question properly. The answer being unsatisfactory, counsel quickly interrupted the witness and again put the question directly contrary to the ruling of the court. It should be evident from this that counsel would not permit the witness to answer a proper question, and repeatedly propounded improper ones. It appears that counsel's conduct, which later caused him to be fined, was subsequent to patient and painstaking explanation by the court, which counsel clearly understood.

There was no reversible error in the action of the court in dealing with an unruly attorney, nor can it be said that the appellant was an innocent bystander, since the jury found him guilty of a conspiracy on evidence which also might have justified a conviction on the substantive offenses charged in the indictment. The appellant was present, and presumably countenanced the methods employed to secure his acquittal. Early in the trial, his attorney began to argue with the court after rulings had been made against him. As the trial progressed, he went so far as to object to the attitude of the court as tending to prejudice him and his client before the jury. Then he became defiant and said he was going to talk as long as the interests of his client demanded. A fine of five dollars only provoked him to say that he would go to jail and rot there the rest of his life, but he was going to represent his client as he saw fit. In these circumstances, a reversal should not be predicated upon the presumption of prejudice resulting from the misconduct of counsel.

The testimony which the majority finds insufficient to sustain a conviction on the conspiracy count includes the uncontradicted testimony of a co-conspirator that the latter reluctantly agreed, after much persuasion by appellant, to commit, and did commit, a crime, viz., to supply narcotics to Christian.[1] It is pointed out by the majority that appellant had conspired with Christian to purchase the narcotics. On the authority of U. S. v. Katz, (271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986), it is urged that a buyer may not be charged with the seller where the sale is the offense denounced, and that, since appellant conspired with the buyer, he may not be convicted of conspiracy with the seller. In the Katz case, after holding that the purchaser of liquor could not be held with the seller for conspiracy to make the sale, the court said: "This embarrassment could be avoid-

---

[1] In counseling this crime, appellant was a principal under 18 U.S.C.A. § 550, as follows: "§ 550. (Criminal Code, section 332.) 'Principals' defined. Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal. (R.S. §§ 5323, 5427; Mar. 4, 1909, c. 321, § 332, 35 Stat. 1152.)"

967

ed in an indictment for a criminal conspiracy only if the buyer and seller were charged with conspiring to commit a substantive offense having an ingredient in addition to the sale, not requiring the agreement of two persons for its completion."

It is clear that what the Supreme Court holds is that the meeting of the minds necessary to complete the offense of sale may not be made the basis of a charge of conspiracy, but that, if the substantive offense be one not requiring the concurrence of both parties, a conspiracy may be charged. Here, appellant was not the purchaser. It was not his mind, but Christian's, that necessarily met with the minds of the Hargroves to complete the sale. When the conspiracy was formed between appellant and the Hargroves, Christian was present, attesting his own assent, and the sale was completed when appellant persuaded his co-conspirators to make the sale. The effect of the finding of a conspiracy between appellant and Christian is no more than to find him guilty of two conspiracies, both of which might have been charged against him, it being unlawful to purchase as well as to sell such drugs. 26 U.S.C.A. § 1043. Cf. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

It is true that these facts made appellant guilty of the substantive offenses, and that the verdict of acquittal on all the other counts is inconsistent with the verdict of guilty on the conspiracy count. The majority agrees that consistency in verdicts is not required, but points to the action of the court in instructing on Counts 2, 3, and 4, and the action of the jury in acquitting on Count 1, as evidence that judge and jury considered appellant no more than an aider and abettor of Christian, not of the Hargroves. As to the judge, the record shows that he instructed as to Counts 2, 3, and 4, because appellant was not present, or in close proximity, when the sales were made, and he did not think appellant could be an aider and abettor under the circumstances. He also stated: "Of course as to conspiracy the situation is entirely different, because the act of one, after the agreement is entered into, becomes the act of all. * * *"

We have no way of knowing whether or not the jury took the view ascribed to them. In Dunn v. United States, (284 U. S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 80 A.L.R. 161), after establishing the rule that consistency in verdicts is not required,

Mr. Justice Holmes quotes from Steckler v. U. S., 2 Cir., 7 F.2d 59, 60, as follows: "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

When read as a whole, the instructions to the jury do not contain error. The trial judge appears to have modeled his definition of reasonable doubt upon the case of Hopt v. Utah, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708; but even if technically defective, I am convinced that the part defining reasonable doubt was not prejudicial. It is certain that the attorney for appellant found no fault with it, requested no modification, took no exception, assigned no error, and did not mention it in his brief or oral argument.

I think the judgment of the district court should be affirmed.

On Motion for Rehearing.

PER CURIAM.

As neither of the judges concurring in the decision desires a rehearing, the motion therefor is overruled.